IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBIN MATTHIAS, individually and
on behalf of others similarly situated,

                          Plaintiff,

v.

TATE & KIRLIN ASSOCIATES, INC. and
LVNV FUNDING, LLC,

                          Defendants.

OPINION AND ORDER

19-cv-182-slc

---

Plaintiff Robin Matthias brings this action on behalf of himself and other similarly-situated individuals, alleging that defendants Tate & Kirlin Associates, Inc. (T&K) and LVNV Funding, LLC sent him and other consumers a form collection letter that failed to clearly state the name of the current creditor to whom their debt is owed, in violation the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692g(a)(2). Now before the court are the parties' cross motions for summary judgment in which the parties debate both whether Matthias has standing to bring this lawsuit and the merits of his class claim. Dkts. 55 and 60. For the reasons explained below, I conclude that Matthias has failed to meet his burden of showing that he suffered a concrete and particularized injury in fact that would afford him standing in this case. Therefore, I am granting defendants' motion for summary judgment, denying Matthias's motion for summary judgment, and dismissing this case without prejudice for lack of subject matter jurisdiction. *See Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 969 (7th Cir. 2016) (dismissal of claims for lack of subject-matter jurisdiction based on named class representative's lack of standing is dismissal without prejudice).

From the parties' proposed findings of fact, I find the following facts to be material and undisputed:

# FACTS

Plaintiff Robin Matthias resides in Ashland, Wisconsin. In August 2016, Matthias made purchases of consumer goods for personal use from the catalogue retailer Fingerhut on a credit account issued by WebBank. By 2018, Mathias fell behind on paying his bills, including the Fingerhut account. At some point after Matthias stopped paying his Fingerhut account, it was sold, transferred, or assigned to defendant LVNV Funding, LLC in April 2017, through a series of transactions between several related entities.

LVNV has no employees and acts exclusively through its sister company and attorney-in-fact, Resurgent Capital Services. LVNV makes 99% of its money by collecting on defaulted consumer debts that it has bought from somebody else.[1] LVNV hired defendant Tate & Kirlin Associates, Inc. (T&K) to collect the Fingerhut account debt owed by Matthias.

On April 3, 2018, T&K sent Matthias a two-page form letter regarding an LVNV account that had been placed with T&K for collection, demanding payment in the amount of $353.36. The first page of the letter identified the last four digits of an account number which matched the last four digits of the account number listed on documents regarding Matthias's Fingerhut/WebBank account, but it did not mention Fingerhut. The first page of the letter stated that the debt "had been listed with our office for collection" and identifies "WEBBANK" as the "Original Creditor," "LVNV FUNDING LLC" as the "Creditor," and SANTANDER CONSUMER USA as the "Previous Creditor." Dkt. 30-1. During the Rule 30(b)(6) deposition,

---

[1] Matthias contends that LVNV is a bad debt buyer that purchases large portfolios of defaulted consumer debts for pennies on the dollar and then collects the debts through other collection agencies, but the Rule 30(b)(6) testimony that he cites does not support this level of detail. In any event, defendants do not dispute for purposes of summary judgment that LVNV is a debt collector.

T&K's representative could not explain why Fingerhut was not listed on the letter or why Santander was listed as a prior creditor.

The first page of this letter directs the reader to "PLEASE SEE ADDITIONAL PAGE(S) FOR IMPORTANT PRIVACY NOTICE." The second page of the letter is titled "PRIVACY NOTICE" and states that it is a notice being provided on behalf of thirteen related or "resurgent" companies that may collect and share personal information about customers or former customers. Dkt. 30-2. The companies are identified by name and include LVNV. The privacy notice does not mention Matthias's account or the creditor in particular.

On May 8, 2018, T&K sent a second letter to Matthias. That letter contained the same information regarding the account number and the names of the creditor, original creditor, and previous creditor. Dkt. 64-4. The letter presented Matthias with three payment options and included a payment coupon addressed to T&K. *Id.*

At his deposition, Matthias testified that the term "previous creditor" meant "the one who owned it before the current." Dkt. 64 at 36-37. He also testified that the "original creditor" is the "primary person who provided me the credit." *Id*. at 35. However, Matthias said that he was confused by the letters because he did not know who the creditor was and did not know whom to pay. *Id.* at 32-34. He testified that he did not "have a payment ready to go" and did not make any payment, *id.* at 41-42, and did not remember or did not know whether he intended to pay the debt, *id.* at 44-45. Matthias did not call T&K, LVNV, or any of the telephone numbers listed on the May 8, 2018 letter. He also did not visit any websites to figure out how to make a payment and did not ask anyone for verification of the debt or clarification

4

about the creditor to whom the debt was owed. Although Matthias says that "Web, Inc."[2] called and left a message for him about paying the debt in April or May 2018, he did not respond to the message or pursue the matter. Around October 2018, Matthias brought the letter to his bankruptcy attorney with all of his debt information. Matthias is seeking only statutory damages and no compensatory damages.

Matthias filed this lawsuit on behalf of himself and other similarly-situated individuals on March 8, 2019 and an amended complaint on August 5, 2020, alleging that the collection letters failed to identify effectively the current creditor to whom the debt was owed, in violation of § 1692g(a)(2), and led to consumer confusion. In orders entered on April 13 and May 8, 2020, the court granted Matthias's motion for class certification and certified the following class under Fed. R. Civ. P. 23: All persons in the State of Wisconsin who, between March 8, 2018 to the present, were sent a collection letter, in the same form as the attached collection letter, by Tate & Kirlin Associates, Inc., on behalf of LVNV Funding, LLC, to collect a defaulted consumer debt originally owed on a WebBank/Santander Consumer USA account.

**OPINION**

**I. Summary Judgment Standard**

The parties have filed cross motions for summary judgment. Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury

---

[2] Although it seems that Matthias was referring to WebBank, the parties do not discuss the issue.

could reasonably find for the nonmoving party" to survive summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-407 (7th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). When the parties cross-move for summary judgment, the court looks to the burden of proof that each party would bear on an issue at trial and requires that party to go beyond the pleadings to affirmatively establish a genuine issue of material fact. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997). If either party fails to establish the existence of an element essential to his or her case, and on which that party will bear the burden at trial, then summary judgment against that party is appropriate. *Mid. Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995). "As the 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trustees of Indiana University*, 870 F.3d 562, 568 (7th Cir. 2017).

**II. Standing under the FDCPA**

Defendants have challenged Matthias's standing to bring this lawsuit. Although it is fairly late in the game, standing is jurisdictional and cannot be waived. *Nettles v. Midland Funding LLC*, __ F.3d __, 2020 WL 7488610, at *2 (7th Cir. Dec. 21, 2020) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990); *Freedom from Religion Found., Inc. v. Nicholson*, 536 F.3d 730, 737 (7th Cir. 2008)). Article III standing is a threshold issue and an essential component of a federal court's jurisdiction to resolve parties' disputes. *Spuhler v. State Collection Serv., Inc.*, __ F.3d __, 2020 WL 7351098, at *1 (7th Cir. Dec. 15, 2020) (citing *Steel Co. v. Citizens for a Better*

*Env't*, 523 U.S. 83, 101-02 (1998)). Therefore, I must address this jurisdictional issue before I can review the sufficiency of the evidence on Matthias's FDCPA claims.[3]

As the party invoking the court's jurisdiction, Matthias bears the burden of establishing the elements of standing: (1) a concrete and particularized injury in fact, (2) that is fairly traceable to the challenged conduct, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1547-48 (2016) (citing *Lujan v. Defenders of Widlife*, 504 U.S. 555, 560-61 (1992); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). The standard for demonstrating the jurisdictional facts at summary judgment is whether the plaintiffs have supplied evidence of "specific facts" that, taken as true, show each element of standing. *Lujan*, 504 U.S. at 561; *Spuhler*, 2020 WL 7351098, at *2.

Relying on *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329 (7th Cir. 2019), defendants contend that Matthias has failed to present any evidence that the collection letters he received caused him to suffer any concrete harm. *Casillas* involved a collection letter that was "incomplete" under § 1692g(a)(4) of the FDCPA, because it failed to notify Casillas that if she wanted to exercise her rights to dispute the debt and verify the creditor's identity, she had to do so in writing. *Id.* at 332. However, the court of appeals explained that "the fact that Congress has authorized a plaintiff to sue a debt collector who 'fails to comply with any requirement [of the Fair Debt Collection Practices Act],' 15 U.S.C. § 1692k(a), does not mean that Casillas has standing." *Id.* at 333. The court reasoned that because Casillas never tried to dispute her debt,

---

[3] The requirements of Article III standing apply to the magistrate judge's "civil jurisdiction" under 28 U.S.C. § 636(c). *Id.* at *2 ("[M]agistrate judge—while not an Article III judge—is a judicial officer within the district court.").

determine the creditor's identity, or otherwise exercise statutory rights, she did not risk losing any statutory right and, thus, did not suffer a concrete harm. *Id.* at 334-35 (distinguishing a provision that entitles a plaintiff to "receive and review substantive information" from a provision that "protect[s]" a consumer's interest in knowing her statutory rights").

Matthias says that *Casillas* is "irrelevant" because it involves a different notice requirement than the one at issue in this case and offers an incomplete view of the Seventh Circuit's holdings regarding FDCPA standing. He contends that the Seventh Circuit has long affirmed that information which would impact a consumer's decision as to whether to pay a debt in response to a collection letter is a material harm. *See, e.g., Lavallee v. Med-1 Sols., LLC*, 932 F.3d 1049, 1052-54 (7th Cir. 2019) (plaintiff suffered actual harm from debt collector's failure to make FDCPA disclosures because existing debt collector's state collection action would have been frozen in its tracks if plaintiff had disputed debt or demanded verification as provided in FDCPA); *Boucher*, 880 F.3d at 366 ("[A] statement is material if it would "influence a consumer's decision . . . to pay a debt in response to a dunning letter."); *Janetos*, 825 F.3d at 324-25 ("Knowing the current creditor potentially affects the debtor in the most basic ways, such as what the debtor should write after 'pay to the order of' on the payment check to ensure that the debt is satisfied" and avoiding the potential for fraud.); *Lox v. CDA*, 689 F.3d 818, 827 (7th Cir. 2012) ("Whether or not [attorney's fees could be added to a debt] would have led Lox to alter his course of action, it would have undoubtedly been a factor in his decision-making process, and very well could have led to a decision to pay a debt that he would have preferred to contest. The false statement was therefore material."). *See also Heisler v. Convergent Healthcare Recoveries*, 2020 U.S. Dist. LEXIS 44920 (E.D. Wis. 2020) (consumer who received collection

letter that mentioned creditor only by stating "Re: WF, Inc — Elmbrook Mem" in upper corner had Article III standing based on testimony that letter left him unsure as to whom to pay).

After the parties completed their summary judgment briefing, the Seventh Circuit cemented its holding in *Casillas* by denying standing in a series of FDCPA cases in which plaintiffs alleged that the collection letters they received did not contain statements required by the statute or contained misleading information. *See, e.g.*, *Nettles*, 2020 WL 7488610; *Spuhler, Inc.*, 2020 WL 7351098 (although collection letter omitted required statement that debt would accrue interest, plaintiff gave no indication that missing information affected his response to collection letters or debts); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069 (7th Cir. 2020) (plaintiffs failed to allege any injury resulting from collection letter that mentioned a remedy that creditor was unlikely to use); *Brunett v. Convergent Outsourcing, Inc.,* 982 F.3d 1067 (7th Cir. 2020); *Bazile v. Fin. Sys. of Green Bay, Inc.*, __ F.3d __, 2020 WL 7351092 (7th Cir. Dec. 15, 2020); *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060 (7th Cir. 2020) (plaintiffs did not contend that they were confused or misled to their detriment by allegedly false statements in dunning letters). The court of appeals made clear that "it's not enough for an FDCPA plaintiff to simply allege a statutory violation; he must allege (and later establish) that the statutory violation harmed him or 'presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect.'" *Larkin*, 982 F.3d at 1060 (quoting *Casillas*, 926 F.3d at 333).

As the court explained in *Spuhler*, "[t]he FDCPA envisions that debtors will use accurate, non-misleading information in choosing how to respond to collection attempts and how to manage and repay their debts. This means that for a concrete injury to result from a dunning

9

letter's exclusion of a statement about accruing interest, that exclusion must have detrimentally affected the debtors' handling of their debts." 2020 WL 7351098, at *3. In other words,

> A debtor confused by a dunning letter may be injured if she acts, to her detriment, on that confusion—if, for example, the confusion leads her to pay something she does not owe, or to pay a debt with interest running at a low rate when the money could have been used to pay a debt with interest running at a higher rate. But the state of confusion is not itself an injury. If it were, then everyone would have standing to litigate about everything.
>
> *Brunett*, 2020 WL 7350277, at *2 (citing *Trichell v. Midland Credit Management, Inc.*, 964 F.3d 990 (11th Cir. 2020)).

Here, Matthias has failed to present evidence showing that he took any action to his detriment. He testified that he was confused by one or both of the collection letters, set them aside, and later brought them to his bankruptcy attorney. Although Matthias contends that the letters left him unsure about whom to pay, his confusion is not enough. Matthias did not try to clarify his confusion, did not make a payment, and did not otherwise attempt to manage his debt. *Id.*; *Gunn*, 982 F.3d at 1069. In fact, he testified that he did not remember or did not know whether he ever intended to pay the debt. The fact that Matthias later handed the letters over to his bankruptcy lawyer does not change the evaluation. *Brunett*, 982 F.3d 1067 ("A desire to obtain legal advice is not a reason for universal standing."). Because Matthias has failed to present sufficient evidence to show standing, this case will be dismissed for lack of subject matter jurisdiction.

"Ordinarily when a class representative is dismissed on grounds applicable to him but not to all other members of the class, the suit is not dismissed but rather another member of the class is substituted as class representative." *Matz v. Household Int'l Tax Reduction Inv. Plan*, 774 F.3d 1141, 1145 (7th Cir. 2014) (citing *Sosna v. Iowa*, 419 U.S. 393, 399 (1975); *Robinson v. Sheriff*

10

*of Cook County*, 167 F.3d 1155, 1157 (7th Cir. 1999)). *See also Wiesmueller v. Kosobucki*, 513 F.3d 784, 786 (7th Cir. 2008) ("The named plaintiff who no longer has a stake may not be a suitable class representative, but that is not a matter of jurisdiction and would not disqualify him from continuing as class representative until a more suitable member of the class was found to replace him."). However, in this case, Matthias never had standing to bring his lawsuit in the first place, so federal jurisdiction never attached. *Walters v. Edgar*, 163 F.3d 430, 432 (7th Cir. 1998). Other class members cannot be substituted as class representatives because "if the named plaintiffs lacked standing when they filed the suit, there were no other party plaintiffs to step into the breach created by the named plaintiffs' lack of standing." *Id.* at 432-33; *see also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV 3690, 2015 WL 3988488, at *28 (N.D. Ill. June 29, 2015) (citing same). In addition, "a named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs." *Payton v. Cty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) (quoting *Allee v. Medrano*, 416 U.S. 802, 828-29 (1974) (Burger, C.J., dissenting) ("Standing cannot be acquired through the back door of a class action.")).

Therefore, because this court never acquired jurisdiction over Matthias's claim in the first place, the order certifying the class must be vacated. *Walters*, 163 F.3d at 437 (all previous rulings in litigation must be vacated and can have no preclusive effect if new lawsuit is filed) (citing *United States v. Munsingwear*, 340 U.S. 36, 39-41 (1950); *Harris v. Board of Governors*, 938 F.2d 720, 723 (7th Cir. 1991); *Illinois v. City of Chicago*, 137 F.3d 474, 478-79 (7th Cir. 1998)). *See also Anderson v. Isham*, 210 F.3d 374 (7th Cir. 2000) (Anderson was member of class in *Walters*, but "[b]ecause the named plaintiffs did not have standing [in *Walters*] when the suit was

11

filed, the district court never had jurisdiction and the certification of the class, of which Anderson would have been a member, was irrelevant.").

ORDER

IT IS ORDERED that:

(1) Plaintiff Robin Matthias's motion for summary judgment, dkt. 55, is DENIED;

(2) The motion for summary judgment filed by defendants Tate & Kirlin Associates, Inc. and LVNV Funding, LLC, dkt. 60, is GRANTED;

(3) The April 13, 2020 order granting class certification, dkt. 43, is VACATED; and

(4) This case is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction on the ground that the named class representative lacks standing. The clerk of court is ordered to enter judgment accordingly and close this case.

Entered this 11th day of January, 2021.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge